## Richmond.

DEERING & CO. v. KERFOOT'S EX'OR ET ALS.

December 15th, 1892.

1. WILLS—*Creditors.*—Code, § 2665, makes decedent's real property assets for payment of his debts in the order in which his personal estate is directed to be applied ; but it recognizes his right to charge his land, but not his personality, for such of his debts as he may prefer.

2. DOWER—*Partnership land.*—Land bought with partnership funds for partnership purposes is so far considered as personalty that widow of deceased partner is not entitled to dower therein, but only to her distributive share thereof. *Parrish* v. *Parrish*, 88 Va. 529

Appeal from decree of circuit court of Clarke county, rendered February 14th, 1890, in a suit wherein W. S. Kerfoot's executor was complainant and Mamie A. Kerfoot and others were defendants. The decree being favorable to the complainant, the defendants appealed. Opinion states the case.

*M. McCormick,* for appellants.

*A. Moore* and *J. J. Williams,* for appellees.

FAUNTLEROY, J., delivered the opinion of the court.

This suit was instituted to the January rules, 1888, by Thomas D. Gold, executor of W. S. Kerfoot, deceased, against Mamie A. Kerfoot, widow of W. S. Kerfoot, deceased, and Joseph R. Hardesty, who had been a partner of W. S. Kerfoot in the agricultural machinery business ; and its object was to obtain from the court a construction of the will of W.

S. Kerfoot, deceased; and, with no one before the court except the testator's widow and his late partner, Joseph R. Hardesty, the court proceeded to construe the will, and to pass upon the rights of creditors who were not before it, by its decree of February 11th, 1888, as follows: " And the court being of the opinion that the said testator, W. S. Kerfoot, had the right to prefer the order in which his debts should be paid out of the assets of his estate, doth adjudge, order, and decree that Thomas D. Gold, the executor and complainant, out of the assets now in his hands, and to come in his hands, do pay the said debts in the order in which the same are mentioned in the said will—that is, he shall pay, first, the individual debts of the said testator, and then any notes upon which the said testator may be bound, as security for his brother, Wm. F. Kerfoot."

Acting under this order, the said executor, Thomas D. Gold, proceeded to distribute the estate in hand—nearly five thousand dollars—among the creditors named and preferred by the will, to the exclusion of the unpreferred creditors, and in the absence of both the preferred and the unpreferred creditors, none of whom were parties to the suit.

At the May term, 1888, an order, for the first time, was made, directing a master commissioner to convene the creditors of W. S. Kerfoot, deceased, to ascertain his debts and assets, and to settle the accounts of the executor. The master returned his report, in execution of this order, October 6th, 1888, in which is contained a settlement of the accounts of the executor, and which shows that, acting under the decree of February 11th, 1888, he had paid out to debts preferred by the will a sum in excess of forty-five hundred dollars, and also ascertaining and reporting a large number of debts still outstanding and unpaid. The commissioner also reported, as a matter of opinion, that the widow of W. S. Kerfoot was entitled to dower in an undivided half interest in a store-

house and lot in Berryville, which was the partnership property of Hardesty & Kerfoot, of which firm W. S. Kerfoot had been a member. To this report the creditors, who for the first time were before the court in the cause, filed sundry exceptions. They denied that the widow was dowable in the partnership property, consisting of the storehouse and lot; and they excepted because the executor had paid large debts in full, and was allowed credit in his settlement therefor, while upon other debts of equal dignity he had made no payment at all. This raised the question whether a testator, *as to his personalty*, could, by his will, make any preference among his creditors. To this position the court was committed by its decree of February 11th, 1888; and the exceptions were overruled; the widow was allowed dower in the partnership property of the storehouse and lot, after the satisfaction of the partnership debts; and the principle, that a testator may, by his will, dedicate his personal estate, as well as his real estate, to the payment of certain of his debts, to the exclusion of others, was established by the decree of February 14th, 1890, which is the decree appealed from.

The court decreed that " W. S. Kerfoot's interest in the storehouse and lot, owned jointly by Joseph R. Hardesty and W. S. Kerfoot, is subject to the dower of said Kerfoot's widow, after the social debts of Hardesty & Kerfoot are provided for."

In this the court erred. The record establishes, beyond a doubt, that the storehouse and lot in Berryville was a part of the social assets of the firm of Hardesty & Kerfoot; and, being such, it is, in the eye of the law, *personalty*, in which the widow could participate only as a distributee. *Parrish* v. *Parrish*, 88 Va. (13 Hansbrough) 529.

The testator, Kerfoot, directed, by his will, his executor to collect his policies of insurance and his other personal assets, and, " having ascertained the amount of my indebtedness, which, having been legally proven, he will proceed to pay off—and, *especially and first*, the following," &c., &c.

And the court, in its decree of the 14th of February, 1890, decreed that " the court, being further of the opinion that W. S. Kerfoot [the testator] had the right to charge his estate, both personal and real, with the payment of certain of his debts, in preference to others, and that by his will he did create such a charge therein," &c., &c., " it is further adjudged, ordered, and decreed that Thomas D. Gold, executor of W. S. Kerfoot, do, upon the rising of this court, expose to sale to the highest bidder, at public outcry, in front of the court-house in Berryville, the half interest in the storehouse and lot of which his testator died seized, owned jointly by him and Joseph R. Hardesty. Out of the proceeds of the one-half interest in the storehouse and lot, after deducting the personal assets of the said firm applicable thereto, and realized at the date of distribution," &c., &c., pay the widow's dower in the one-half interest of the deceased partner in the storehouse and lot, and then the debts as preferred in the will of the testator, and stated in the master commissioner's report.

We are of opinion that the circuit court erred in holding that, as to the personalty, the testator had the right to prefer his creditors. Section 2665, Code of 1887, makes real property assets for payment of debts of a decedent in the order in which the personal estate is directed to be applied; but it recognizes the common law right of the ancestor to indicate the charges he wishes to make upon the *land* for such of his debts as he may prefer. But the statute does not alter or enlarge the common law liability of the personalty of a decedent as the primary fund for the payment of his debts, and does not give to a testator the right to prefer his creditors out of his *personal* assets, as it does in the case of *realty*. It is *expressio unius* as to the *realty*, but *exclusio alterius* as to the *personalty*. Wills must conform to the law, which, in section 2660, Code of 1887, expressly and imperatively prescribes the .

order in which personalty shall be applied in the payment of a decedent's debts.

" It is beyond the power of a testator to affect the legal order of payment by a direction in his will."   7 English and American Ency. (Thompson's), page 308, note and cases cited.

" A testator has no power to direct his executor to pay all his debts equally, and thus defeat legal preferences."   Redfield on Wills, 234 (edition of 1866).   See Leading Cases in Equity, Vol. II., Part I., page 383 ; 1 Lomax on Executors, 559, 637 ; 2 Lomax on Executors, 401, 403.

We are of opinion that the decree appealed from is wholly erroneous ; and, for the foregoing reasons, our judgment is to reverse the decree complained of, and to remand the case to the circuit court of Clarke county for such proceedings as shall conform to this opinion.

· DECREE REVERSED.